IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROLLER BEARING COMPANY OF AMERICA, Inc., RBS SOUTHWEST PRODUCTS, Inc., and ALL POWER MANUFACTURING Co., ) ) ) ) | |
| Plaintiffs, ) | Case No. 20 C 6924 |
| ) v. ) ) | Judge Robert W. Gettleman |
| MOSTONTR PAZARLAMA DOKUM VE MAKINA SAN., Ltd. Sti., MOSTON METALLURGY Co., DAGCAN PIROGLU, and GURKAN PIRODLU, ) ) ) ) ) | |
| Defendants. ) | |

## MEMORANDUM OPINION & ORDER

Plaintiffs Roller Bearing Company of America, Inc. ("RBC"), RBS Southwest Products, Inc. ("RBS"), and All Power Manufacturing Co. ("All Power"), bring this suit against defendants MostonTR Pazarlama Dokum Ve Makina San. Ltd. Sti ("MostonTR"), Moston Metallurgy Co. ("Moston Metallurgy"), Dagcan Piroglu, and Gurkan Piroglu. Plaintiffs are attempting to enforce a 2019 Connecticut default judgment obtained against defendants Moston Metallurgy and Gurkan Piroglu. Plaintiff's complaint brings two counts for piercing the corporate veil, and request that the court hold defendants jointly and severally liable for the Connecticut default judgment. Defendants have moved to dismiss on personal jurisdiction grounds and under Rule 12(b)(6) for failure to state a claim. For the reasons discussed below, defendants' motion (Doc. 14) is granted.

## BACKGROUND

On September 21, 2016, RBC filed a complaint in the Superior Court of Milford, Connecticut, naming Moston Metallurgy and its president, Dagcan Piroglu, as defendants. The

complaint alleged that RBC and Moston Metallurgy had a contract for sale of centrifugal casings, which RBC used to manufacture metal bearings used in aerospace manufacturing. RBC claimed that the casings supplied by Moston Metallurgy did not comply with certain specifications set forth in RBC's terms and conditions. RBC further alleged that Moston Metallurgy did not respond to RBC's demand for damages and failed to participate in the aviation industry's required investigation. Ultimately, RBC provided replacement casings and bearings to its customers at significant cost. Neither Moston Metallurgy nor Dagcan Piroglu appeared, and the Connecticut court entered a default judgment in RBC's favor for a total of $7,449,733.00, plus post-judgment interest of 10% per annum. That judgment has not been satisfied.

Three years after filing the Connecticut lawsuit, on November 15, 2019, RBC registered the Connecticut default judgment in the Circuit Court of the Eighth Judicial Circuit of Illinois, Adams County. RBC further issued a citation to discover assets against Hollister Whitney Elevator Corp. ("Hollister Whitney"), based on shipping records that indicated that MostonTR (not the judgment debtor, Moston Metallurgy) shipped products to Hollister Whitney in Quincy, Illinois.[1] Hollister Whitney moved to quash the citation, claiming it did not have any assets belonging to Moston Metallurgy. RBC argued that Moston Metallurgy and MostonTR are indistinct, and that the Circuit Court should pierce the corporate veil between the two entities and consider them one and the same.

---

[1] Plaintiff alleges that MostonTR and Hollister Whitney had a long and extensive business relationship, spanning almost twenty years. According to plaintiffs, from 2018 to 2020, Hollister Whitney paid MostonTR over $4.5 million dollars for various products.

After discovery, RBC moved for a turnover order pursuant to 735 ILCS 5/2-1402, alleging that Hollister Whiney held monies owed "to all Moston entities," because they are "inextricably intertwined and commingled." MostonTR opposed to motion. On April 24, 2020, RBC filed a second citation to discover assets. MostonTR opposed this motion as well, arguing that the Circuit Court lacked personal jurisdiction over MostonTR, Dagcan Piroglu, and Gurkan Piroglu.

The Circuit Court issued two orders. The first granted MostonTR's motion to quash the citations to discover assets. The only statement regarding jurisdiction was a cursory sentence: "This court has jurisdiction over the parties and subject matter." There was no analysis regarding personal jurisdiction. The Circuit Court determined that RBC did not properly serve the citation to discover assets, and granted MostonTR's motion to quash. RBC did not appeal this order within the thirty-day timeline. The second order denied RBC's motion for a turnover order, concluding that Hollister Whitney did not hold assets of the judgment creditor, Moston Metallurgy, and that RBC failed to demonstrate that piercing the corporate veil was allowed in the context of a supplemental proceeding.

RBC filed the instant complaint on November 23, 2020, requesting that this court hold the defendants jointly and severally liable for the Connecticut default judgment under a theory of piercing the corporate veil between MostonTR, Moston Metallurgy, and the two individuals. Relevant to defendants' motion to dismiss, RBC is a Delaware corporation with its principal place of business in Oxford, Connecticut. Both RBS and All Power Manufacturing are subsidiaries of RBC, with RBS's principal place of business in Baldwin Park, California, and All Power Manufacturing's principal place of business in Santa Fe, California.

All defendants are Turkish. Plaintiffs allege that MostonTR is a Turkish corporation with its principal place of business in Istanbul, Turkey, and Moston Metallurgy is a Turkish corporation with its principal place of business in Gebze, Kocaeli, Turkey. Plaintiffs claim, on information and belief, that MostonTR and Moston Metallurgy have the same owners, share the same address, business location, phone and fax number, website, and customer list, and that the two companies have participated in a scheme to avoid satisfying the Connecticut judgment. Regarding the two individuals, plaintiffs allege that both Dagcan Piroglu and Gurkan Piroglu are Turkish citizens who reside in Turkey.

## DISCUSSION

Defendants have moved to dismiss for lack of personal jurisdiction under Rule 12(b)(2) and for failure to state a claim under Rule 12(b)(6). In reviewing a motion to dismiss under either rule, the court takes as true all factual allegations in plaintiffs' complaint and draws all reasonable inferences in plaintiffs' favor. Killingsworth v. HSBC Bank Nev., N.A., 507 F.3d 614, 618 (7th Cir. 2007). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis, but must also be facially plausible. Aschroft v. Iqbal, 556 U.S. 662, 678 (2009); see also, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Defendants argue that the complaint should be dismissed under the doctrine of collateral estoppel, for lack of personal jurisdiction, and for failure to state a claim for piercing the corporate veil. The court will address each argument in turn.

### I. Collateral Estoppel

4

Defendants first argue that the court need not engage in a personal jurisdiction analysis because the Circuit Court already found that MostonTR, Dagcan Piroglu, and Gurkan Prioglu are not subject to personal jurisdiction in Illinois. The court disagrees.

"Collateral estoppel may be appropriate when the issue decided in the prior adjudication is identical with the one presented in the current action, there was a final judgment on the merits in the prior adjudication, and the party against whom estoppel is asserted was a party to…the prior adjudication." Sanchez v. City of Chicago, 880 F.3d 349, 357 (7th Cir. 2018). In addition to these threshold requirements, the court should also satisfy itself that "no unfairness will result to the party sought to be estopped," that is, the party mush have had "a full and fair opportunity to present his case" and an "incentive to litigate." Id. Here, the issue of personal jurisdiction was presented to the Illinois Circuit Court in a nearly identical fashion to the issue immediately before this court. The parties are the same, and both parties extensively briefed the personal jurisdiction issue before the Circuit Court.

However, the court concludes that there was no final judgment on the merits. The Circuit Court issued a cursory, two-page order. Its only statement regarding jurisdiction was a single sentence proclaiming: "This court has jurisdiction over the parties and subject matter." This sentence is not enough for the court to infer that there was a final judgment on the merits of the personal jurisdiction issue. The Circuit Court appears to have quashed the citation to discover assets based on service issues (the only issue with any sort of analysis and discussion), not based on personal jurisdiction. Defendants argue that the Circuit Court's statement that MostonTR's involvement was "for the limited purpose…to protect its property interest being held by Third Party Respondent," suggests that the Circuit Court addressed the merits of

defendants' personal jurisdiction arguments. But without any other analysis from the Circuit Court, this court finds that these two sentences do not constitute a final judgment on the merits. Collateral estoppel does not bar the parties from litigating personal jurisdiction in this court.

## II.     Personal Jurisdiction

Defendants next argue that the court lacks both general and specific personal jurisdiction. Generally, a "plaintiff need not include facts alleging personal jurisdiction in the complaint, but 'once the defendant moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction.'" Curry v. Revolution Laboratories, LLC, 949 F.3d 385, 392 (7th Cir. 2020) (citing Purdue Research Found. v. Sanofi-Synthelabo, S.A., 338 F.3d 773, 782 (7th Cir. 2003)). Where, as here, a determination of jurisdiction is based on the submission of written materials instead of an evidentiary hearing, a plaintiff need only make a prima facie case of personal jurisdiction. Id.

The court looks to Illinois's long-arm statute to determine whether it may exercise personal jurisdiction over the defendants. See Philos Techs., Inc. v. Philos & D, Inc., 802 F.3d 905, 912 (7th Cir. 2015). The statute provides that the outer boundary of the personal jurisdiction of an Illinois court is set by the Due Process clause of the Fourteenth Amendment. 735 Ill. Stat. Ann. 5/29-209(c). Under the Due Process clause, a court may exercise personal jurisdiction over an out-of-state defendant when that defendant has "minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. State of Wash., Office of Unemployment Compensation & Placement, 326 U.S. 310, 316 (1945). "The defendant's conduct and

connection with the forum state [must be] such that he should reasonably anticipate being haled into court there." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985). Personal jurisdiction may be exercised if the court has either general or specific personal jurisdiction. See KM Enters., Inc. v. Global Traffic Techs., Inc., 725 F.3d 718, 732 (7th Cir. 2013).

General jurisdiction requires that a defendant's contacts with a forum state be sufficiently "'continuous and systematic' as to render [them] essentially at home in the forum state." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011); see also Daimler AG v. Bauman, 571 U.S. 117, 122 (2014). The general jurisdiction threshold is "high" and "'considerably more stringent' than that required for specific jurisdiction." Abelesz v. OTP Bank, 692 F.3d 638, 654 (7th Cir. 2012) (citing Purdue Research Fund, 338 F.3d at 787). "General jurisdiction exists when a foreign corporation's continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." John Crane Inc. v. Simon Greenstone Panatier Bartlett, APC, 2017 WL 1093150, at *7 (N.D. Ill. Mar. 23, 2017) (citing Daimler, 571 U.S. at 118). General jurisdiction thus "calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide." Id.

Here, there can be no dispute that the court lacks general jurisdiction over Moston Metallurgy and the two individual defendants. There is no allegation that these three defendants have any contacts with Illinois, let alone the type of extensive and pervasive contacts to justify general jurisdiction. Moston Metallurgy has its principal place of business in Turkey, and the individuals are Turkish citizens who reside in Turkey. Moston Metallurgy owns no property in Illinois, has no offices in Illinois, has no agent registered in Illinois, and there is no allegation

that Moston Metallurgy has made significant sales to Illinois. Thus, the court lacks general jurisdiction over Moston Metallurgy and the two individual defendants.

For MostonTR, plaintiff has alleged that MostonTR has several Illinois customers, including Hollister Whitney. Hollister Whitney has been a customer of MostonTR for over 20 years and MostonTR has shipped millions of dollars of product to Illinois. Although MostonTR's contacts with Illinois are fairly extensive and deliberate, they do not satisfy the general jurisdiction standard. MostonTR has no agent, no employees, no facilities or warehouses in Illinois. MostonTR merely ships a substantial amount of products here. In similar circumstances, courts have routinely held that they lacked general jurisdiction over the foreign corporation. See, e.g., Shrum v. Big Lots Stores, Inc., 2014 WL 6888446, at *7 (C.D. Ill. Dec. 8, 2014) (foreign corporation was not "at home" in Illinois even though its contacts with Illinois were "fairly extensive and deliberate"—including having a physical facility, registering to do business, and maintaining a registered agent—because contacts insufficient under Daimler); John Crane, Inc., 2017 WL 1093150, at *7 (Texas-based law firm not subject to general jurisdiction in Illinois despite repeatedly litigating in Illinois). Simply put, just because MostonTR does significant business with Illinois does not mean it is "at home" in Illinois. Consequently, none of the defendants are subject to general jurisdiction in Illinois.

Specific jurisdiction exists where a defendant's suit-related conduct creates a substantial connection with the forum state. Walden v. Fiore, 571 U.S. 277, 284 (2014). There are three "essential requirements" for a court to exercise specific jurisdiction over an out-of-state defendant: (1) the defendant must have purposefully availed itself of the privilege of conducting business in the forum state or purposefully directed its activities at the state; (2) the plaintiff's

alleged injury must have arisen out of the defendant's forum-related activities; (3) the exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice. Curry v. Revolution Labs. LLC, 949 F.3d 385, 392 (7th Cir. 2020).

As noted above, the only defendant with any significant contact with Illinois is MostonTR. MostonTR appears to have purposefully availed itself of the privilege of doing business in Illinois because it conducted twenty years and many millions of dollars' worth of business in Illinois. However, plaintiffs have failed to allege that their injury arose out of MostonTR's business dealings in Illinois. Plaintiffs argue that its harm stems from defendants' abuse of corporate formalities. For example, plaintiffs allege that Moston Metallurgy procured magnets for Hollister Whitney, but MostonTR sent the invoice and collected the payments. According to plaintiffs, "[t]his harmed RBC because it created an artificial barrier to the attachment of funds that would have otherwise been due to the debtor, Moston Metallurgy, and therefore subject to turnover to creditors." The court disagrees. Plaintiffs' current claims seeking to enforce the Connecticut judgment and pierce the corporate veil have nothing to do with MostonTR's commercial activities in Illinois. See Repository Techs. V. Sys. Consultants, Inc., 2003 WL 21148340, at *7 (N.D. Ill. May 16, 2003) (no specific jurisdiction where plaintiff requested that the court enforce a judgment and pierce the corporate veil "d[id] not lie in the wake of [defendant's] commercial activities in Illinois"). There is no connection whatever between plaintiffs' injury and MostonTR's contacts with the state of Illinois.

Based on the allegations before the court, it is clear that no injury to plaintiffs was committed in Illinois, and no suit related conduct occurred in Illinois. The court lacks specific personal jurisdiction over the defendants.

**III.     Failure to State a Claim**

Even if the court had personal jurisdiction over defendants, the case would still be dismissed because plaintiffs have failed to state a claim for piercing the corporate veil.   Under Illinois law, courts will pierce the corporate veil if: (1) "there is such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist"; and (2) "adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice."   Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec, 529 F.3d 371, 379 (7th Cir, 2008).   Plaintiffs have failed to sufficiently plead the second prong.

For the first prong, plaintiffs have minimally asserted enough facts that, if proven, would justify piercing the corporate veil between MostonTR and Moston Metallurgy.   When determining whether a unit of interest or ownership exists, courts look to the following factors: "inadequate capitalization; failing to issue stock; failing to observe corporate formalities; failing to pay dividends; corporate insolvency; nonfunctioning corporate officers; missing corporate records; commingling funds; diverting assets to an owner or entity to creditor detriment; failing to maintain an arm's-length relationship among related entities; and whether the corporation is a mere façade for a dominant owner."   Wachovia Securities, LLC v. Banco Panamericano, Inc., 674 F.3d 743, 752 (7th Cir. 2012).   Plaintiffs identify several of these factors, including that defendants share an address, phone and fax numbers, share customer lists, are operated by the same individuals, and that one company will bill for transactions placed by the other company. Although there is no allegation regarding stock, dividends, and inadequate capitalization, the complaint sufficiently alleges a unity of interest between the two companies.   The complaint

10

does not, however, allege any facts that would justify piercing the corporate veil to the two individuals.

For the second prong, courts have repeatedly held that the prospect of an unsatisfied judgment is not sufficient to establish that piercing the corporate veil would prevent fraud or injustice. See, e.g., Escobedo v. Ram Shirdi Inc., 2014 U.S. Dist. LEXIS 128512, at *15-16 (N.D. Ill. Sept. 15, 2014) ("Plaintiff's prospect of an unsatisfied judgment, while admittedly unfortunate, is not sufficient to establish that piercing the corporate veil would prevent fraud or injustice."); Wachovia Securities, 674 F.3d at 756 (sanctioning a fraud or injustice for piercing the corporate veil requires "something less than an affirmative showing of fraud," but "something more than the mere prospect of an unsatisfied judgment"); Sea-Land Servs., Inc. v. Pepper Source, 941 F.2d 519, 522-23 (7th Cir. 1991) (same). Here, plaintiffs' allegations involve only the prospect of an unsatisfied judgment. That is insufficient to plead a claim for piercing the corporate veil.

## CONCLUSION

For these reasons, defendants' motion to dismiss (Doc. 14) is granted.

**ENTER:**

**Robert W. Gettleman**
**United States District Judge**

**DATE:** December 12, 2021

11